UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISAIAH JAMES KEBREAU,<br><br>    Plaintiff,<br><br>v.<br><br>DIGITAL CREDIT UNION,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 1:24-cv-11613-LTS<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DIGITAL FEDERAL CREDIT UNION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Digital Federal Credit Union ("DCU")[1] submits this memorandum of law in support of its Motion to Dismiss the Complaint filed by Plaintiff Isaiah James Kebreau ("Plaintiff") on June 24, 2024 (the "Complaint"). Plaintiff alleges that DCU's attempts to collect payment from him on two car loans violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). For the reasons below, Plaintiff's bare-bones Complaint lacks factual allegations sufficient to state a plausible claim for relief under RICO. Accordingly, the Court should dismiss Plaintiff's Complaint, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.       BACKGROUND**

This lawsuit concerns two car loans Plaintiff obtained from DCU on separate vehicles—one from July 20, 2022, in the amount of $7,599.00, and the other from October 12, 2023, in the amount of $25,891.31. *See* Compl., Doc. No. 1 at 5. For both loans, Plaintiff alleges that he entered into a written loan contract with DCU and that he "paid the loan off in full" on the same day he entered the loan contract, but that DCU has still sought repayment of the loans. Id. Specifically, Plaintiff alleges that: (a) with respect to the October 2023 loan, he received a letter

---

[1] The Complaint incorrectly names Digital Federal Credit Union as "Digital Credit Union."

1

on January 20, 2024, "threatening to repossess [his] vehicle for non repayment"; and (b) with respect to the July 2022 loan, he received a letter on May 28, 2024, which "threatened to repossess [his] vehicle as punishment for non repayment" and attempted "to make [him] repay the loan." Id. The Complaint contains no other allegations.

On this thin basis, Plaintiff asserts a single cause of action against DCU, alleging violation of RICO generally. See id. at 4 (identifying RICO as the basis for jurisdiction and citing to "18 U.S.C. [§] 1961–1968 – RICO Act"). The Complaint does not identify a specific provision of RICO that DCU is alleged to have violated. Plaintiff seeks damages of $36,826.33 and injunctive relief that includes release of the loans and conveyance of the titles to the vehicles. Id. at 5.[2]

## II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Plaintiff cannot rely on "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" or "naked assertion[s] devoid of "further factual enhancement." Id. (quotation marks omitted).

---

[2] The Court can, and should, dismiss Plaintiff's Complaint on the pleadings under Rule 12(b)(6). However, it is important to note that Plaintiff's allegations are factually wrong. Plaintiff has not "paid the loan[s] off in full[.]" To the contrary, he is delinquent on his payment obligations on both loans. Rather than paying the amounts due on the loans, Plaintiff inundated DCU with correspondence purporting to "accept" loan payoff estimates—without submitting an actual monetary payment—and unilaterally declaring the October 2023 loan paid off. See, e.g., Example Letter from Plaintiff to DCU, dated Dec. 7, 2023, & DCU response, dated Jan. 5, 2024 (attached as Exhibits A and B to the Declaration of Robert W. Sparkes, III). This type of tactic—commonly employed by litigants asserting so-called "sovereign citizen" based theories—is factually and legally frivolous. See, e.g., U.S. Bank N.A., v. Janelle, No. 2:20-cv-00337-JAW, 2021 WL 4847901, at *7–8 (D. Me. Oct. 18, 2021) (describing the hallmarks of "sovereign citizen" pseudo-litigation and bemoaning the "widespread practice of pro se litigants submitting court filings that are nothing more than a collection of legal-sounding but false rules that purport to be law") (cleaned up). Plaintiff, in other words, lacks any basis for asserting a RICO claim, or any other cause of action, against DCU.

Similarly, the Court cannot "credit conclusory legal allegations or factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." Douglas v. Hirshon, 63 F.4th 49, 55 (1st Cir. 2023) (cleaned up).

In addition, because Plaintiff's RICO claim sounds in fraud, he must also satisfy the heightened pleading requirements of Rule 9(b), which demands that he allege "'with particularity the circumstances constituting the fraud.'" Lerner v. Coleman, 26 F.4th 71, 84 (1st Cir. 2022) (quoting Fed. R. Civ. P. 9(b)); see also Efron v. UBS Fin. Servs. Inc. of Puerto Rico, 96 F.4th 430, 437 (1st Cir. 2024) (civil RICO plaintiff must plead with specificity the "time, place and content of the alleged ... communications perpetrating that fraud") (quotation marks omitted).

While a *pro se* plaintiff may be entitled to a liberal reading of his allegations, he must still set forth fact-based allegations sufficient to satisfy Rules 8(a) and 9(b). See Scott v. Oklahoma Student Loan Auth., No. 23-cv-10841-PBS, 2024 WL 1509251, at *2 (D. Mass. Feb. 22, 2024) ("'[P]ro se status does not insulate a party from complying with procedural and substantive law.'") (quoting Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997)); Wilkes v. Ocwen Fin. Corp., No. 19-10592-LTS, 2019 WL 3947264, at *2 (D. Mass. Aug. 20, 2019) (Sorokin, J.) ("[P]*ro se* litigants are not exempt from the[] basic pleading standards.").

### III.   ARGUMENT

Plaintiff's Complaint attempts to transform (factually incorrect) allegations of ordinary debt collection activities into "a pattern of racketeering activity" and, in turn, use the "'unusually potent weapon'" of RICO to avoid paying his two loans. Humana, Inc. v. Biogen, Inc., 666 F. Supp. 3d 135, 147 (D. Mass. 2023) (describing civil RICO claims as "'the litigation equivalent of a thermonuclear device'") (quoting Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991), abrogated on other grounds, Salinas v. United States, 522 U.S. 52 (1997)). Even accepting his allegations as true, however, Plaintiff's Complaint fails to set forth allegations to plausibly

3

establish each of the necessary elements of his RICO claim.  Accordingly, because courts must "'particularly scrutinize'" and "'strive to flush out frivolous RICO allegations at an early stage of the litigation," the Court should dismiss Plaintiff's Complaint with prejudice.  Id. (quoting Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 20 (1st Cir. 2000) and Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990)).

### A. The Complaint Fails to State a Plausible RICO Claim Against DCU

To assert a plausible civil RICO claim, Plaintiff must allege that he (a) has suffered an injury to "his business or property" (b) "by reason of" (c) a prohibited activity under RICO Section 1962.  18 U.S.C. § 1964(c); Efron, 96 F.4th at 437 (same).  He fails on all three elements.

#### 1. Plaintiff does not allege a plausible prohibited activity under RICO

The Complaint does not specify which provision of Section 1962 DCU is alleged to have violated, which is alone fatal under Rules 8(a) and 12(b)(6).  Reading the Complaint as liberally as possible, the only section that could conceivably apply is Section 1962(c).

As a threshold matter, Section 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or ***collection of unlawful debt***.

18 U.S.C. § 1962(c) (emphasis added).  RICO defines the term "unlawful debt" as a debt related to illegal "gambling activity" or to a business lending money at usurious interest rates (*i.e.*, at least twice the enforceable rate).  Id. § 1961(6).  Thus, while Plaintiff's claim may turn on alleged attempts to collect a debt, Plaintiff does not, and cannot, allege a claim based on the "collection of unlawful debt" as prohibited by RICO.  As such, Plaintiff's RICO claim fails as a matter of law.

To the extent Plaintiff tries to shoehorn his allegations into a RICO claim, he still fails to satisfy his burden of alleging the basic elements required to establish a claim under Section

4

1962(c): "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Efron, 96 F.4th at 437 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

### a. *Plaintiff fails to sufficiently allege a RICO "enterprise"*

First, Plaintiff does not allege the existence of a RICO "enterprise." A RICO enterprise is "'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Kelly v. Waters Corp., No. 17-12193-LTS, 2023 WL 2404040, at *5 (D. Mass. Feb. 9, 2023) (Sorokin, J.) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). Importantly, an enterprise must be "distinct" from the named defendant. Id. As this Court has explained, "'the same entity cannot do double duty as both the RICO defendant and the RICO enterprise.'" Id. (quoting Miranda, 948 F.2d at 44); see also Leavitt v. United Servs. Auto. Ass'n, No. 4:23-cv-11341-IT, 2024 WL 218504, at *8 (D. Mass. Jan. 19, 2024) ("[A]n individual defendant cannot constitute the RICO 'enterprise' because 'the defendant and the enterprise must be distinct.'") (quoting Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 448 (1st Cir. 2000)).

Plaintiff does not allege the existence of any enterprise, let alone a specific entity or association separate from DCU. The Complaint does not suggest conduct, collaboration, or participation by any person or entity, other than DCU, with respect to the alleged efforts to collect on Plaintiff's loans. The Complaint, in fact, does not even contain the term "enterprise." This failure alone warrants dismissal of Plaintiff's RICO claim. See Leavitt, 2024 WL 218504, at *8 ("[F]ailure to identify any enterprise, distinct from a named person defendant, is fatal under RICO") (quotation marks omitted); Gill v. Friedmann, No. 14-13105-GAO, 2015 WL 3767042, at *3 (D. Mass. Jun. 17, 2015) (granting motion to dismiss RICO claim because "[t]he complaint contains absolutely no factual allegations sufficient to allege … the existence of an enterprise").

5

### b. *Plaintiff fails to plausibly allege "racketeering activity"*

Second, Plaintiff does not plausibly allege "racketeering activity." The Complaint does not identify any specific "racketeering activity" that Plaintiff believes DCU engaged in. RICO sets forth a lengthy list of criminal actions that can constitute "racketeering activity" (see 18 U.S.C. § 1691(1)), but Plaintiff does not direct the Court or DCU to any of the enumerated predicate acts. Plaintiff's RICO claim fails for this reason alone. See Humana, 666 F. Supp. 3d at 155 ("'It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial.'") (quoting Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991), abrogated on other grounds, Salinas, 522 U.S. 52 (1997)).

Even if the Court liberally interprets the Complaint to allege mail fraud as the predicate racketeering activity—premised on Plaintiff's allegations that he "received a letter in the mail" on January 20, 2024 and that DCU "sent [him] a letter" on May 28, 2024—Plaintiff's claim still fails to satisfy both the Rule 9(b) and the Rule 8(a) pleading standards. A claim predicated on alleged mail fraud requires Plaintiff to show that DCU "engaged in a scheme to defraud with the specific intent to defraud and that [it] used the United States mails … in furtherance of the scheme." Efron, 96 F.4th at 438 (internal quotations omitted). Importantly, the alleged scheme "*must be intended to deceive* another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct." Id. (internal quotations omitted; emphasis in original). Plaintiff must allege each of these elements with the particularity demanded by Rule 9(b). See id. at 437, 438–39.

Although Plaintiff generally alleges that he received two letters from DCU requesting repayment of his delinquent loans, the Complaint does not provide any other specific details regarding the content of those letters and it does not "plausibly allege how those statements were fraudulent." Id. at 439; Humana, 666 F. Supp. 3d at 156 ("Courts have routinely held that generalized statements concerning mailings or wire communications are not sufficient to satisfy

6

the pleading requirements."). Nor does the Complaint adequately allege "a scheme to defraud." At most, Plaintiff's allegations might be generously described as suggesting a breach of contract. But a breach of contract cannot "itself constitute a scheme to defraud." Id. at 438 (internal quotations omitted); see also Britton v. Marcus, Errico, Emmer & Brooks, P.C., No. 18-cv-11288-IT, 2020 WL 7024545, at *6 (D. Mass. Nov. 30, 2020) (dismissing RICO claim where "Plaintiffs have not put forward a single fact by which the court may be able to reach even an inference that there was a general scheme to defraud as opposed to, at worst, sloppy billing practices that sometimes ran afoul of the FDCPA"). Simply put, "[n]one of the [Plaintiff's] allegations is remotely inconsistent with the conclusion that" DCU acted as an "ordinary lender," not as the driver of a mail fraud scheme. Douglas, 63 F.4th at 57 (affirming dismissal of RICO claim).

Moreover, the Complaint does not contain a single allegation—conclusory or otherwise—to infer that DCU specifically intended to deceive Plaintiff when it sought repayment of his loans. Plaintiff's claim, therefore, falls well short of Rule 9(b)'s requirement that Plaintiff allege with particularity "the basis for inferring scienter." Efron, 96 F.4th at 438 (quotation marks omitted); see also Britton, 2020 WL 7024545, at *6 (granting motion to dismiss because, "[w]hile Plaintiffs have alleged numerous acts of overbilling throughout their complaint, none of the allegations detail the basis for inferring scienter") (quotation marks omitted).

The law in the First Circuit is clear: a "'[f]ailure to plead predicate acts adequately is enough to sink [a] RICO claim.'" Efron, 96 F.4th at 440 (quoting Ahmed, 118 F.3d at 889). Plaintiff has failed to adequately allege a mail-fraud-based racketeering act and, for this reason, the Court should dismiss Plaintiff's Complaint.

### c.     *Plaintiff cannot establish a "pattern" of racketeering activity*

Finally, the Complaint lacks sufficient allegations from which the Court can plausibly infer that DCU engaged in a "pattern" of racketeering activity. Under RICO, a pattern exists only where

7

a plaintiff can show "that at least two acts of racketeering occurred within ten years of each other." Home Orthopedics Corp. v. Rodriguez, 781 F.3d 521, 528 (1st Cir. 2015). The existence of two predicate acts, however, is not enough to establish a pattern—first, the predicate acts must be "related" and, second, they must "amount to or pose a threat of continued criminal activity." Lerner, 26 F.4th at 84 (quotation marks omitted). The second requirement, known as "continuity," is wholly absent from Plaintiff's Complaint. Indeed, the First Circuit has "consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims." Home Orthopedics Corp., 781 F.3d at 530 (quotation marks omitted). Plaintiff's allegations here, read in the most favorable light possible, show the type of "single, narrow scheme" targeting a single victim that the First Circuit has "consistently" rejected. Id.

To illustrate why, take the two types of continuity considered by the courts—closed-ended continuity and open-ended continuity. With respect to "closed-ended continuity, no RICO liability attaches where "a closed-ended series of predicate acts … constitute[s] a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities." Id. (quotation marks omitted). Applying this standard, this Court has rejected closed-ended continuity where the alleged "scheme" constituted "an effort to accomplish one goal, with the harm directed at one person." Kelly, 2023 WL 2404040, at *7. For the same reasons, Plaintiff's allegations here—predicated on the mailing of two letters, sent only to Plaintiff and addressing Plaintiff's personal loans—do not support closed-ended continuity. See Arbogast v. Pfizer, No. 22-cv-10156-DJC, 2023 WL 1864295, at *7 (D. Mass. Feb. 9, 2023) (finding continuity lacking where allegations, taken as true, showed the "enterprise's unlawful acts, taken together, comprise a single effort to facilitate a single financial endeavor against a single victim").

8

As to "open-ended continuity," Plaintiff must show that the predicate acts "themselves include a specific threat of repetition extending indefinitely into the future [or] … are part of an ongoing entity's regular way of doing business." Home Orthopedics Corp., 781 F.3d at 531 (quotation marks omitted).  Open-ended continuity is lacking where, as here, the object of the alleged scheme—*e.g.*, payment of an outstanding debt—is finite and there is no indication or allegation that the defendant would continue the alleged scheme once its singular object (*e.g.*, collection of the debt) is achieved.  See id. (finding open-ended-continuity theory would fail where neither plaintiff's "complaint nor briefing provide[d] any indication that were [defendant] to receive his fees from [plaintiff], the 'scheme' to collect money would continue into the indefinite future").  Plaintiff's allegations plainly do not support a plausible closed-ended or open-ended continuity theory under well-established First Circuit precedent.

In short, Plaintiff's Complaint fails to allege any facts to support the plausible, or even possible, existence of a "pattern of racketeering activity," and, as such, the Court should dismiss Plaintiff's claim.  See Tashjian v. Deutsche Bank, No. 19-cv-40074-DHH, 2021 WL 1080447, at *6 (D. Mass. Feb. 23, 2021) (recommending dismissal of RICO claims where complaint lacked "sufficient factual material from which the Court can reasonably infer that the defendants' alleged actions were the conduct of an enterprise through a pattern of racketeering activity"), adopted by No. 19-40074-TSH, 2021 WL 1080205 (D. Mass. Mar. 19, 2021).

**2. Plaintiff does not allege sufficient facts to support the essential elements of injury and causation**

The Complaint does not support a plausible inference that Plaintiff has suffered an injury to his "business or property" or that any such injury was actually and proximately caused by DCU's alleged efforts to collect on Plaintiff's loans.  See Roe v. Healey, 78 F.4th 11, 27 (1st Cir. 2023) ("Plaintiffs must be able to show that the predicate acts alleged proximately caused the harm they

suffered"). For these additional reasons, the Complaint is patently insufficient to state a plausible claim for relief under RICO and should be dismissed.

Plaintiff does not allege that he made any payments to DCU after receiving DCU's letters. Nor does he allege that DCU repossessed either of his vehicles. Simply put, he does not allege any concrete economic injury to business or property. See In re Celexa and Lexapro Mktg. and Sales Pracs. Litig., 915 F.3d 1, 8 (1st Cir. 2019) ("Prevailing on a RICO claim requires proof of an economic injury."); Talley v. Mazzocca, 796 F. App'x 61, 63 (3d Cir. 2019) (RICO injury "must be a concrete financial loss") (quotation marks omitted); Mathew v. Citigroup Global Mkts. Inc., No. 23-12302-FDS, 2024 WL 3030513, at *6 n.12 (D. Mass. Jun. 17, 2024) ("As a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite" such that a claim is subject to dismissal where it "fail[s] to state a clear and definite statement of … losses.") (quotation marks omitted).

Although Plaintiff seeks recovery of $36,826.33 in damages (*see* Compl. at 5), he does not explain the basis for those damages and, more importantly, he does not even attempt to allege a causal link connecting that relief to any specific conduct of DCU. See Roe, 78 F.4th at 28 (affirming dismissal of RICO claim where "plaintiffs failed to allege that their injury was proximately caused by alleged racketeering acts"); see also Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9 (2010) (explaining that proximate cause "requires some direct relation between the injury asserted and the injurious conduct alleged") (quotation marks omitted).

**B.    RICO Does Not Provide a Right to Recover Injunctive Relief**

Plaintiff's request for injunctive relief fails for the additional reason that RICO does not allow a private plaintiff to recover such relief. The plain statutory language leads directly to this conclusion. Section 1964(c) entitles a successful civil RICO plaintiff to recover only "the damages he sustains [trebled] and the cost of the suit"; it makes no mention of injunctive or equitable relief.

10

18 U.S.C. § 1964(c).  Although the First Circuit has not directly addressed this issue, other circuits have expressly held injunctive relief unavailable to a civil RICO plaintiff.  See Hengle v. Treppa, 19 F.4th 324, 356 (4th Cir. 2021) ("Section 1964 does not authorize private RICO plaintiffs to sue for prospective injunctive relief."); Dixie Carriers, Inc. v. Channel Fueling Serv., Inc., 843 F.2d 821, 829–830 (5th Cir. 1988) (holding equitable relief not an available remedy for a civil RICO claim); Religious Tech. Ctr. v. Wollersheim, 796 F.2d 1076, 1084 (9th Cir. 1986) (same).  This Court should follow suit and dismiss or strike Plaintiff's request for injunctive relief.[3]

## IV.     CONCLUSION

For the foregoing reasons, DCU respectfully requests that the Court: (1) grant this Motion to Dismiss; (2) dismiss the claim alleged in Plaintiff's Complaint with prejudice and without leave to amend; and (3) provide such further relief as the Court deems just and proper.

---

[3] At least two circuits have found equitable relief available to a private litigant asserting a civil RICO claim.  See Chevron Corp. v. Donziger, 833 F.3d 74, 138–139 (2d Cir. 2016); Nat'l Org. for Women, Inc. v. Scheidler, 267 F.3d 687, 697 (7th Cir. 2011), rev'd on other grounds, Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393 (2003).  Those decisions, however, are inconsistent with the "unambiguous" statutory text of Section 1964(c), which "makes no mention whatever of injunctive or declaratory relief."  Hengle, 19 F.4th at 353–56.

                            Respectfully submitted,

                            DEFENDANT DIGITAL FEDERAL CREDIT UNION,

                            By its attorney,

                            */s/ Robert W. Sparkes, III*
                            Robert W. Sparkes, III (BBO# 663626)
                            K&L GATES LLP
                            1 Congress Street, Suite 2900
                            Boston, MA 02114-2023
                            Tel: (617) 261-3100
                            Fax: (617) 261-3175
Dated: July 9, 2024              Email: robert.sparkes@klgates.com

## CERTIFICATE OF SERVICE

      I hereby certify that on July 9, 2024, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail and e-mail to the parties listed below:

*Plaintiff*
Isaiah James Kebreau
153 Forest Ave.
Brockton, MA 02301
ikebreaum@gmail.com


                                              */s/ Robert W. Sparkes, III*
                                              Robert W. Sparkes, III