UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISAIAH JAMES KEBREAU, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 1:24-cv-11613-LTS |
| DIGITAL CREDIT UNION, | ) ) |
| Defendant. | ) ) ) |

**DEFENDANT DIGITAL FEDERAL CREDIT UNION'S
OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY**

Defendant Digital Federal Credit Union ("DCU")[1] submits this Opposition to the Motion for Discovery filed by Plaintiff Isaiah James Kebreau ("Plaintiff"). Plaintiff's request for discovery is procedurally improper, lacks any factual or legal basis, and seeks irrelevant documents. For these reasons, as further detailed below, the Court should deny Plaintiff's Motion.

**I.   BACKGROUND**

In the Complaint, Plaintiff asserts a single cause of action against DCU for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Doc. No. 1 at 4). In support, Plaintiff alleges that: (a) he entered into two separate car loan agreements with DCU; (b) he purportedly paid off those loans; and (c) DCU has nevertheless attempted "to make [him] repay the loan[s]" and threatened to repossess his vehicles. (Id. at 5).

On July 9, 2024, DCU filed a Motion to Dismiss. (Doc. Nos. 8–10). In response, Plaintiff filed an Opposition to the Motion to Dismiss and a Motion for Discovery. (Doc. No. 11). In his filing, Plaintiff offered a new—albeit factually and legally frivolous—allegation regarding the alleged payment of his loans. (Doc. No. 11 at 2). According to Plaintiff, after he entered into the

---

[1] The Complaint incorrectly names Digital Federal Credit Union as "Digital Credit Union."

1

loans, the loan notes "were then treated as drafts by [DCU], and deposited into each of [Plaintiff's] auto loan accounts [he] ha[s] currently open with [DCU]." (Id.). In Plaintiff's mind this sleight of hand magically transformed his loans from debt obligations into cash equivalent credits through which he was able to pay off his loans. (Id.). This theory—"that Plaintiff has the ability to convert a payment demand into a money order and magically extinguish his debt"—is nonsensical and universally rejected by courts. Larkins v. Montgomery Cty. Cir. Ct., No. 2:19-cv-281-MHT-WC, 2020 WL 2744116, at *4-5 (M.D. Ala. Apr. 21, 2020) (discussing "the outlandish legal theories of sovereign citizens claims") (internal quotations omitted); see also Vachon v. Reverse Mortg. Solutions, Inc., No. EDCV 16-02419-DMG (KES), 2017 WL 6628103, at *5–6 (C.D. Cal. Aug. 11, 2017) (refusing to credit and describing as "patently frivolous" the "pseudo-legal conclusion" that plaintiff "fulfilled his loan obligation when he executed the promissory note agreeing to repay the loan over time"); Bendeck v. U.S. Bank Nat'l Assoc., No. 17-00180 JMS-RLP, 2017 WL 2726692, at *4 (D. Haw. Jun. 23, 2017) ("readily reject[ing] the 'promissory note is money' premise as absurd and frivolous").

Against this background and presumably to support his fanciful theory, Plaintiff seeks an order compelling DCU to produce: (a) Plaintiff's loan agreements; (b) various IRS forms that Plaintiff contends DCU was required to submit; (c) a report Plaintiff believes DCU filed with the U.S. Treasury; and (d) "Cash Receipts." (Doc. No. 11 at 3–5). Plaintiff argues that these documents are necessary "to develop facts to oppose [DCU's] Motion to Dismiss." (Id. at 5–6).

## II.     ARGUMENT

### A.     Plaintiff is Not Entitled to Discovery to Oppose DCU's Motion to Dismiss

Plaintiff's request for discovery to oppose DCU's Motion to Dismiss is procedurally improper and, in effect, seeks to put the cart (fact discovery) before the horse (a well-pled complaint setting forth a plausible claim for relief). As the First Circuit has explained, "one of the

2

main goals of the plausibility standard is the avoidance of unnecessary discovery." Douglas v. Hirshon, 63 F.4th 49, 60 (1st Cir. 2023) (cleaned up). Thus, to open the doors to discovery, Plaintiff first bears the burden to "allege enough facts to raise a reasonable expectation that discovery will reveal evidence of an actionable claim." Id. (cleaned up). Where, as here, "the pleadings offer no reason to think discovery is worthwhile," the First Circuit has instructed district courts to reject discovery requests by "plaintiff[s] confronted with a Rule 12(b)(6) motion." Id.

For the reasons detailed in DCU's Motion to Dismiss, Plaintiff has failed to meet his burden of pleading facts to support a plausible claim for relief against DCU. (Doc. Nos. 8–10, 12). The Court should deny Plaintiff's Motion for Discovery for this reason alone.

      **B.**    **Plaintiff's Discovery Requests are Futile; the Documents He Requests Will Not Support his Opposition to DCU's Motion to Dismiss or his RICO Claim**

             **1.**    *Plaintiff's loan documents confirm that he has not paid off his loans*

Plaintiff anchors his claim on the central allegation that he has already paid off his loans. (See Doc. No. 1 at 5; Doc. No. 11 at 2). Plaintiff's loan agreements, which Plaintiff requests in his Motion, are provided with this Opposition along with the transaction histories for those loans. These documents definitively defeat Plaintiff's foundational allegation. These documents show:

On July 20, 2022, Plaintiff obtained a $7,599.00 loan from DCU to finance his purchase of a 2005 Acura TL ("Loan 141").[2] In connection with Loan 141, Plaintiff executed a Note, Security Agreement, and Federal Disclosure Statement, which required him to make monthly payments for 65 months and conveyed to DCU a security interest in—and, in the event of default, a right to repossess—the Acura.[3] Plaintiff made monthly payments from September 2022 to March 2024,

---

[2] See Note, Security Agreement, and Federal Disclosure Statement, dated July 20, 2022 (Exhibit A to the Declaration of Robert W. Sparkes, III, dated July 31, 2024 ("Sparkes Decl.")).
[3] Id. at 1–2.

3

but failed to make payments in April and May 2024.[4] Plaintiff made a monthly payment in June 2024, but he has not made any payments on Loan 141 since then.[5] Loan 141 remains in default, with Plaintiff owing $6,445.49.[6]

On October 12, 2023, Plaintiff obtained a second auto loan in the amount of $25,891.31 from Auto House USA Inc. (later assigned to DCU) to finance his purchase of a 2011 Porsche Panamera ("Loan 142").[7] In connection with Loan 142, Plaintiff executed a Retail Installment Sale Contract, which required him to make monthly payments for 65 months and conveyed to DCU a security interest in—and, in the event of default, a right to repossess—the Porsche.[8] Plaintiff made one payment on Loan 142, in November 2023; he has not made a single additional payment since November 2023.[9] Loan 142 remains in default, with Plaintiff owing $28,850.11.[10]

Put simply, the only relevant documents Plaintiff requests neither "prove that Plaintiff's claims and complaint are in fact true and accurate," as Plaintiff asserts (Doc. No. 11 at 5), nor provide any basis for Plaintiff to oppose DCU's Motion to Dismiss. And, because DCU has now provided Plaintiff with the loan agreements, Plaintiff's request for these documents is moot.

### 2. *The remaining documents that Plaintiff requests are irrelevant to DCU's Motion to Dismiss and the issues in this case*

The remaining documents that Plaintiff requests through his Motion are plainly irrelevant to DCU's Motion to Dismiss and the issues in this case. Additionally, because Plaintiff appears to base his requests on frivolous legal and factual theories, the requested documents do not even exist in relation to his loans. The Court should therefore deny the Motion for Discovery. See Fed.

---

[4] Transaction History Summary for Loan 141, at 1–2 (Exhibit B to the Sparkes Decl.)
[5] Id. at 1.
[6] Id.
[7] See Retail Installment Sale Contract – Simple Finance Charge, dated Oct. 12, 2023 (Exhibit C to the Sparkes Decl.)
[8] Id. at 1, 3.
[9] Transaction History Summary for Loan 142, at 1 (Exhibit D to the Sparkes Decl.).
[10] Id.

4

R. Civ. P. 26(b)(1) (limiting discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").

First, none of the discovery requested by Plaintiff bears on the issue raised by DCU's Motion to Dismiss—whether Plaintiff has adequately pled a plausible RICO claim. Indeed, as DCU argues in its Motion, even assuming all of Plaintiff's well-pled allegations are true, Plaintiff still fails to satisfy his pleadings-stage burden. (Doc. Nos. 8–10, 12).

Second, other than Plaintiff's loan agreements, the documents Plaintiff requests are neither relevant to nor have any logical connection with the issues in this case. Plaintiff's dispute, at its core, boils down to one central factual question—whether Plaintiff paid off his loans. The relevant evidence—Plaintiff's loan agreements and payment histories—provides the answer: Plaintiff has not paid off the loans; he remains obligated to pay them and DCU may continue collections efforts consistent with the loan agreements and applicable law. (See Section II.B.1, supra.). But even putting aside the ultimate factual conclusion, the documents Plaintiff seeks have no conceivable relevance to any factual issue in this case, let alone the central issue underlying Plaintiff's claim.

This case does not involve private or public bond instruments and, thus, does not implicate IRS Form 1099-OID (for reporting payments made per a bond's original issue discount),[11] Form 8281 (applicable to issuers of publicly offered debt instruments),[12] or Form 1099-INT (for reporting payments of interest on U.S. Savings bonds and Treasury obligations, among other things).[13] Nor does it involve payments of interest (or any other) income by DCU to Plaintiff or the withholding of taxes that might trigger issuance of an IRS Form 1099-INT.[14] Under the relevant loan agreements, Plaintiff is obligated to make monthly payments of principal and interest

---

[11] See IRS Website, at https://www.irs.gov/forms-pubs/about-form-1099-oid (last visited July 26, 2024).
[12] See IRS Website, at https://www.irs.gov/forms-pubs/about-form-8281 (last visited July 26, 2024).
[13] See IRS Website, at https://www.irs.gov/instructions/i1099int (last visited July 26, 2024).
[14] See id.

to DCU, not the other way around.[15] Plaintiff's requests for an IRS Form 8300 (for reporting the receipt of cash payments over $10,000),[16] a FinCEN Currency Transaction Report, Form 112 (for reporting transactions over $10,000 to the U.S. Department of the Treasury),[17] and "cash receipts" are equally irrelevant. Plaintiff does not allege that he has ever made a cash payment to DCU greater than or equal to $10,000, and, even if he had made any such payment, it would be reflected in Plaintiff loan transaction histories, which DCU provides in connection with this Opposition.[18]

In short, Plaintiff's requests for various IRS Forms, U.S. Treasury Reports, and vaguely alleged "cash receipts," even assuming such documents exist, have no relevance (or conceivable relation of any kind) to the issues, claims, or defenses in this case. Instead, Plaintiff's requests appear based on legally frivolous and universally rejected pseudo litigation theories associated with the sovereign citizen movement—which appears to explain why Plaintiff seeks nonsensical documents that do not exist in relation to his DCU accounts. See, e.g., Hurt v. Exeter Fin., LLC, No. 4:23-CV-1285 JSD, 2023 WL 8088601, at *3 & n.4 (E.D. Mo. Nov. 21, 2023) (rejecting "specious" claims "attempting to give non-legal tender for a vehicle" based on alleged "entitle[ment] to relief under the 'UCC'" and allegations that loan note was a "security"); Larkins, 2020 WL 2744116, at *3–5 (discussing common forms of "sovereign citizen" claims, including theories that cite to "UCC 3-104" and seek to avoid repaying debts); Lopez v. Baker, No. 18-10183-LTS, 2018 WL 2170325, at *1 & n.1 (D. Mass. May 10, 2018) (finding arguments common to those "asserted by sovereign citizen groups" to be "frivolous").

---

[15] See Plaintiff's loan agreements, at Exhibit A and Exhibit C to the Sparkes Decl.
[16] See IRS Website, at https://www.irs.gov/businesses/small-businesses-self-employed/form-8300-and-reporting-cash-payments-of-over-10000 (last visited July 26, 2024).
[17] See U.S. Treasury Website, at https://www.fincen.gov/resources/filing-information (last visited July 26, 2024)
[18] See Transaction History Summaries for Plaintiff's loans, at Exhibit B and Exhibit D to the Sparkes Decl.

## III.  CONCLUSION

For the foregoing reasons, DCU respectfully requests that the Court deny Plaintiff's Motion for Discovery.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | DEFENDANT DIGITAL FEDERAL CREDIT UNION, |
|  | By its attorney, |
|  | */s/ Robert W. Sparkes, III* |
|  | Robert W. Sparkes, III (BBO# 663626) |
|  | K&L GATES LLP |
|  | 1 Congress Street, Suite 2900 |
|  | Boston, MA 02114-2023 |
|  | Tel: (617) 261-3100 |
|  | Fax: (617) 261-3175 |
| Dated: July 29, 2024 | Email: robert.sparkes@klgates.com |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 29, 2024, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail and e-mail to the parties listed below:

*Plaintiff*
Isaiah James Kebreau
153 Forest Ave.
Brockton, MA 02301
ikebreaum@gmail.com

                                            */s/ Robert W. Sparkes, III*
                                            Robert W. Sparkes, III